OPINION

This is an appeal of the District Court’s dismissal of Appellant’s forcible entry action against Appellees. The District Court granted Appellees’ motion to dismiss after briefing and a hearing on the motion. The District Court dismissed the complaint and Appellant filed their notice of appeal. The Court reverses the District Court and remands the case with guidelines to the District Court.
I
PROCEDURAL HISTORY
This appeal arises from a business site lease dispute between Appellant Kayenta Township Commission (KTC) and Appel-lees William and Jodonna Ward (the Wards). KTC is the governing body of the Kayenta Township (Township) pursuant to broad powers of home rule granted by the Council as further explained below. KTC asserts that the Wards have been operating at least three businesses in the Township without a lease and without making any lease rental payments to the Township for 2006, 2007 and 2008. The Township’s Lease Ordinance requires all businesses operating within the Township boundaries to have a business site lease. The parties do not dispute that the Wards presently operate the businesses within Township boundaries under no lease and have paid no lease-related rents. The Wards assert that KTC has no authority to bring a forcible entry action because only the Economic Development Committee of the Navajo Nation Council (EDC) may exercise the possessory rights of the Navajo Nation over a business site. On June 20, 2007, the Kayenta District Court dismissed the forcible entry action, finding that KTC was not the proper party to bring the action because of the EDC’s final authority to approve leases. Additionally, the action was not authorized by the Attorney General.
KTC appealed the trial court’s decision on July 6, 2007. After bond was duly waived, the trial court permitted KTC to extend its time for filing the record on appeal, however no similar request was made to this Court until two days after the extended deadline for filing, resulting in dismissal of the appeal on August 28, 2007. Following KTC’s motion for reconsidera *486 tion and the Wards’ opposition, reconsideration was granted on April 24, 2008 in the interest of fairness and justice. The Wards then filed a motion to dismiss, while ETC moved to strike the Wards’ reply to their opposition motion. The Wards further filed a motion to amend the record. On January 13, 2009, the Court denied the Wards’ motion to dismiss, found ETC’s motion to strike moot, and granted the Wards’ motion to amend the record. Finally, on July 30, 2009, the Court gave notice that the appeal would be decided on the briefs without oral argument.
There have been several turnovers in this Court, causing delays. Justices serving on the Court in this appeal have undergone many changes, beginning with the recusal of Chief Justice Herb Yazzie on July 15, 2007 due to his previous service as counsel for Appellant ETC. Since then there have been four Acting Chief Justices and four Associate Justices serving by designation at separate times on this appeal.
II
ISSUES
The sole issue in this appeal is whether the home rule authority of the Township empowers the Township to file a possesso-ry action to eject a trespasser, squatter or other individual in wrongful possession from a business site within Township boundaries in the absence of a lease, and without prior authorization by the Attorney General.
III
STANDARD OF REVIEW
The issues in this case are legal questions. The Court reviews legal questions de novo, with no deference given to the trial court’s decision. Hall v. Watson, No. SC-CV-52-07, 8 Am. Tribal Law 135, 138 (Nav.Sup.Ct, February 24, 2009); Judy v. White, 8 Nav. R. 510, 528, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004). We give no deference to the lower court, and review these questions based on our interpretation of the relevant law. The Navajo Nation v. Arviso, 8 Nav. R. 697, 701, 6 Am. Tribal Law 675 (Nav.Sup.Ct.2005).
IV
ACTUAL POSSESSION
When dismissing the original action, the trial court found that pursuant to 2 N.N.C. § 724(B)(2) only the Economic Development Committee of the Navajo Nation Council (EDC) has the final authority to approve leases, therefore pursuant to The Navajo Nation v. Arviso, 8 Nav. R. 697, 6 Am. Tribal Law 675 (Nav.Sup.Ct.2005), the Navajo Nation has possession of the site, and exercises its rights as possessor in the area of business leases through the EDC, which pursuant to 2 N.N.C. § 724(H) “has the power to represent the Navajo Nation in matters related to economic development.” The Court found that this conclusion is not altered by the adoption of the Eayenta Township statutes because the statutes provide the Township with authority only to the extent that they are consistent with Navajo laws of general application. The trial court then found that Sections 724(B)(2) and 725(H) are laws of general application which circumscribe the Township’s authority to press a forcible entry claim.
We find the reasoning of the trial court flawed in its equation of final lease approval authority with the possessory right. In Indian trust land matters on the Navajo Nation where several parties are required under federal and tribal law to sign a valid and binding lease, title, ownership, and actual possession do not reside in the same party and even the lease approv *487 al authority may be divided between different authorities.
In Arviso, supra, we addressed a matter similar to this case, where an individual occupied a business site without a lease. We held that while forcible entry and de-tainer (FED) actions require the pre-exis-tence of a lease, a forcible entry action is an appropriate alternative action pursuant to 16 N.N.C. § 1801(B)(1) for a person in “actual possession” to eject a trespasser, squatter or other individual in wrongful possession who is on the site without the person’s consent. Id. at 702. The action is a summary method solely to recover possession of the site as distinguished from an action to vindicate title or settle other rights under a lease. The statute itself provides that title is not an issue, and further provides that the action may not be brought in connection with any other issue. 16 N.N.C. § 1805(A). Therefore, the only issue in such an action is the right of actual possession.
Unlike leases between private parties where an owner-lessor or his/her designated agent negotiates the right of actual possession with a lessee in a two-party lease, there are unique issues attendant to possession of trust land. Between 1999 and 2006, the Township as initiator of the lease approval process, the President of the Navajo Nation, the Secretary of the Interior or designee on behalf of the federal government, and lessee must all sign a four-party lease in order for a site lease located within Township boundaries to be valid and binding. Between 2006 and 2009, the Navajo Nation through the EDC also signed Township leases due to reasons further explained below. The involvement of the federal government is necessary because actual title to trust land is held by the United States in trust for the Navajo People. See Yazzie v. Catron, 7 Nav. R. 19, 21 (Nav.Sup.Ct.1992). Pursuant to 25 USC § 415(a), such lands are considered restricted lands which “Indian owners” may lease with the approval of the Secretary of the Interior. In this case, the “Indian owner” is the Navajo Nation. Under Navajo Nation law, the exclusive pos-sessory right of the Navajo Nation may be conferred by lease or by land withdrawal. Pursuant to 2 N.N.C. § 724(C), Navajo Nation trust land may be withdrawn for possession by authorities other than the central government. Such authorities may then use the land or lease it to third parties, depending on the conditions of the withdrawal.
The possessory interest is legally defined as “the exclusive right to exert control over specific land by virtue of an interest created in the property that need not be accompanied by title.” See Black’s Law Dictionary 1165 (6th ed.1990). The possessory right exists when there is “a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control.” Id. In this case concerning a Township lease, four or five persons have lease approval authority but only one has an actual possessory right.
It is undisputed that the Wards operate a business on a business site within the boundaries of the Kayenta Township, do not have a lease, and indeed, never had one. While the Wards assert that pursuant to Arviso, the Navajo Nation is the proper party to file an ejection action against them, Arviso concerned a business site in Crownpoint. In this case, the site is located within the boundaries of a home rule municipality on land specifically withdrawn by the Navajo Nation for local governance pursuant to Township home rule.
The Township was initially created as a home rale governance project in 1985. In 1986, roughly 3,606 acres of trust lands were withdrawn to be governed by the *488 Township. The withdrawn lands include the business site in question. In due course, the ETC was established. The Township’s Plan of Operations was approved and later amended by the Council. In 2003, after functioning as a governing authority and effective unit of local government for over 18 years, the Township was permanently made a home rule municipality by Resolution CAU-47-03[1].
Upon the Township’s creation as a permanent municipality, the Council deleted all detailed and specific delegations of duties and authorities from the Township’s previous enabling legislation and replaced all of it with the single phrase:
The ETC shall have the duty, authority, and responsibility to perform all functions necessary for local self government, consistent with all generally applicable laws and regulations of the federal government and the Navajo Nation.
2 N.N.C. § 4084 (as amended in 2003).
The above amendment was taken as a broad grant of home rule power. Even before the creation of a permanent home rule municipality, the Township’s home rule powers were understood as extensive. In 1999, the Attorney General (AG) stated that the Township’s 1996 amended Plan as approved by the Council “clearly demonstrated the Council’s intent that the ETC will act as the governing body with extensive and primary governance authority” over the withdrawn lands.[2] On April 26, 2006, the Attorney General affirmed the “broad police power” of the Township over its withdrawn lands under principles of home rule.[3] This 2006 advisory opinion of the AG illustrates both a clear understanding of the meaning of Navajo Nation home rule local autonomy and also resistance to this autonomy. According to the AG:
“The uniqueness of [the home rule] concept is a transfer of broad powers without a statute to specifically authorize the exercise of a particular power or action. In other words, a local government unit not operating under home rule only has powers that have been expressly granted to it by the central government. The basic principle of a home-rule municipal (sic) allows for the local government to be more efficient in its public service to the community and allow for local action, without having to wait for the Navajo Nation Council to meet, which makes the local government more productive and responsive to the community ... the [Council] has the ability to limit the authority of the home-rule municipality, but it must expressly prohibit the specific authority.”[4]
Memorandum of the Attorney General, n.2, supra at 2-3.
*489 We note that in the same memorandum, the AG contradicted its above reasoning and proceeded to declare that the Council’s final lease approval authority over sites within Township boundaries must be specifically delegated away by the Council with specific standards and guidelines. We gather from the submitted documentation that this contradiction put into question the status of existing Township leases which by-passed Council review in reliance on previous AG advisory opinions which had upheld the Township’s final lease approval authority.[5] The confusion was put to rest when shortly thereafter, the EDC enacted Resolution EDCJN-28-09 (June 3, 2009)[6] specifically delegating approval authority for business site leases to the Kayenta Township[7] and issued the “Kay-enta Township Business Site Leasing Management Plan.”[8]
We next address the trial court’s conclusion that 2 N.N.C. § 724(B) and § 724(H), which address uniquely governmental functions, are “generally applicable laws.” It is necessary to explore the origins of the phrase. The phrase was first used by the United States Supreme Court in defining the limits of restraints Congress may place on the states. In Garcia v. San Antonio Metropolitan Transit Autk, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed,2d 1016 (1985) and its progeny, the U.S. Supreme Court determined that only “laws of general applicability” may be imposed by the federal government on the states. In Garcia, supra, the U.S. Supreme Court described “laws of general applicability” as laws applicable to both public and private parties “that do not regulate uniquely governmental functions.” Such “laws of general applicability” are the only kinds of laws with which Congress may use to regulate the conduct of states, otherwise, Congress would be regulating “states as states,” as a dual sovereign, which it is not permitted to do. Id., and see also New York v. United States et al., 505 U.S. at 160, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). We note that while the U.S. Supreme Court established the phrase and its interpretation in order to address the extent and limitations of the Supremacy Clause, the Navajo Nation Council chose to use that Court’s nearly exact phrasing in our home rule municipality enactment without further explanation or definition. This, and the well-documented history of Navajo Nation home *490 rale, lead this Court to conclude that the Council intended “generally applicable laws” to have the meaning as coined by the U.S. Supreme Court, and restrained itself from intruding into home rale governmental functions. Under the Navajo principle of aaj7/J+igo k-7 doo t’33 nij0ch7ida, such local governance powers having been acknowledged by the Council may not be given and then taken away without the consent of the people.
The trial court erred in considering as “generally applicable laws” 2 N.N.C, § 724(B) and § 724(H), which address uniquely governmental functions intrusive of the home rale authority. Even if they were properly taken as “generally applicable laws,” the trial court erred in determining that these laws pre-empt the Township’s possessory right to eject trespassers, squatters or other individuals in wrongful possession from Township land in the absence of a lease. We find no evidence that the power to evict or eject trespasser or squatters from Township land has been otherwise preempted by provisions conferring lease approval authority and the authority to represent the Navajo Nation in economic development.
The concept of home rule on the Navajo Nation is founded on a long-held traditional view of local governance springing from the desire of communities to determine their own fate and develop their own economies. From resolutions of the Council, local governance is understood as an “inherent” right. The home rale enactment and its many supporting resolutions describe the delegation of governmental power to the Township as “a recognition of the importance and inherent authority of these local communities in governance of the Navajo Nation.” CJY-42-03 at Whereas Clause 5 and repeated in no less than six supporting resolutions attached as exhibits C-H to the enactment.[9] (Emphasis added).
For the foregoing reasons, we find that the trial court erred in finding that final lease approval authority is dispositive of actual possessory right, and further erred in finding that 2 N.N.C. §§ 724(B)(2) and (H) are laws of general applicability which circumscribe KTC’s home rale power to eject trespassers through a forcible entry-action. By broad grant of power, the Township’s control over its withdrawn land includes the right to govern its lands according to local ordinances and necessarily includes the possessory right to eject trespassers. We further find that KTC is the “person with actual possession” as intended by the forcible entry statute at 16 N.N.C. § 1801(B)(1), whose consent is required for entry, and who is the proper party to file the action in this case.
V
STANDING
The trial court found that pursuant to 2 N.N.C. § 1964(F), the Attorney General has exclusive right to initiate all actions in which the Navajo Nation is a party, and the Township failed to provide evidence that the Attorney General had authorized the forcible entry action. The trial court erred.
Section 1964 was last amended in 1990, well before the creation of the permanent home rule municipality. Pursuant to our discussion of Township home rule authority above, we find that when the Council amended 2 N.N.C. § 4084 in 2008 providing that “[t]he KTC shall have the duty, *491 authority, and responsibility to perform all functions necessary for local self government, consistent with all generally applicable laws and regulations of the federal government and the Navajo Nation,” the Council effectively, and without ambiguity pre-empted all other laws concerning uniquely governmental functions. As 2 N.N.C, § 1964(F) concerns a uniquely governmental function, the provision was effectively preempted by CAU-47-03. Therefore, we conclude that the AG’s authorization was not required for the Township to press the forcible entry action.
VI
DINÉ BI BEENAHAZ’ ÁANII
In Arviso, supra, we stated that Diñé bi beenahaz’ áanii has application to all facets of life, including an eviction from a business site. Arviso, at 703, 6 Am. Tribal Law 676. A land use decision by the people through their governments is the balance struck between the individual land user and the needs and desires of the community. Id. However, in Arviso we concluded that k’é does not mandate the Navajo Nation to engage in negotiations with the trespasser. We reach the same conclusion here.
Even though there is no requirement for the parties to negotiate, we urge the Township and the Wards to meet and see if a settlement can be reached. We note here that the Wards operate as many as three businesses in the small business environment of the Township—The Blue Coffee Pot, The Fina Gas Station, and the Junction Market—which may unduly impact the community were they to discontinue.
VII
Based on the foregoing, the Court REVERSES the District Court and REMANDS the case for disposition consistent with this opinion. Appellees’ demand for attorney’s fees is DENIED.
Concurring opinion of Associate Justice Toledo.
I write separately to concur in the outcome of the judgment and dissent as to additional analysis that I do not believe the Court should reach at this time.
I am in agreement and concur with my fellow justices that the passage of EDCJN-28-09 resolved the question of lease approval authority through specific delegation to the Kayenta Township Commission. However, this is where I would have ended analysis on that issue. As this case was originally presented by the parties, and prior to the statutory changes to Title II Article 14 and the promulgation of the “Kayenta Township Business Site Leasing Management Plan” by the EDC in 2009, the Court was posed with two laws that were arguably contradictory in nature. Since that time, the EDC has unequivocally granted the authority to regulate business site leases within the boundaries of the Kayenta Township to the Kayenta Township Commission so long as those leases do not involve business site leases under the leasing authority of the Navajo Nation Shopping Center Corporation See, EDCJN-28-09. This political event essentially makes this case moot. Yet, my colleagues feel a need to go beyond the controversy presently before it, even when conceding that “the sole issue in this appeal is whether the home rule authority of the Township empowers the Township to file a possessory action to eject a trespasser ... without prior authorization by the Attorney General.” [10]
*492 This Court has previously held that “mootness is a concept we recognize in our courts. We do so not because of any need to mimic federal courts, but because mootness is consistent with our Navajo values.” In re Mental Health Services for Bizardi, 8 Nav. R. 593 at 597, 5 Am. Tribal Law 467 (Nav.Sup.Ct.2004), We also held we have “adopted a bar on advisory opinions, stating that we not issue a decision where an issue is not before us.” Id, Because the narrow issue properly before the Court has been resolved by clear EDC action, I decline to expand the holding beyond lease approval authority of the Township and decline to address the interpretation of the full extent of home rule powers, the meaning of general applicable laws and the like, and, therefore, respectfully dissent to the extent that this case does so.

. Resolution CAU-47-03 became effective immediately upon the Council’s override of the President's veto of CYJ42-03 approving "Amendments to 1 N.N.C. § 552 and 2 N.N.C. §§ 4081 et seq. to Recognize the Kay-enta Township as a Political Subdivision of the Navajo Nation".

. Opinion of the Attorney General of the Navajo Nation dated January 7, 1999, regarding AG-01-99: Authority of the Kayenta Township Commission to Approve and Enter into Leases of Navajo Trust lands within its Withdrawn Area Designated as the Township Site.

. Memorandum of the Attorney General of the Navajo Nation to President Joe Shirley, Jr. dated April 26.2006, regarding RFS: 06-0644: Request for a Legal Opinion RE: Whether the Kayenta Township Commission Has the Authority to Approve Business Site Leases for Presidential Signature.

. That the AG went on to reverse several of its own previous advisory opinions and require a clear delegation of the Council's lease approval authority to the Township in order for the Township to bypass Council review is of no moment in this appeal and will not be addressed by this Court.

.In its 1999 opinion, n,2 supra, the AG concluded that the Township’s home rule authority included the authority to negotiate and approve leases on its withdrawn lands without further review and/or approval by the Navajo Nation Council in order to be finalized by the Secretary of the Department of the Interior. Thereafter, the Township initiated and approved leases without review by the Council with the full recognition of the Bureau of Indian Affairs (BIA), and the BIA ‘‘itself has approved at least half a dozen leases previously approved by the KTC.” Memorandum from James E. Fitting, Assistant Attorney General, Economic Development Unit, Navajo Nation Department of Justice to Gary Nelson, KTC Township Manager dated June 23, 2005, regarding RFS No. 05-1201: Request for an Advisory Opinion on the Approval Authority for the Kayenta Economic Development Corporation Master Lease.

. See infra note 10.

. Except for those business site leases under the leasing authority of the Navajo Nation Shopping Centers Corporation.

. Additionally, in 2000, the U.S. Congress granted the Navajo Nation the authority to enter into most commercial leases without approval of the Secretary of the Interior so long as each lease is executed under the tribal regulations approved by the Secretary. See 25 U.S.C. 415(e). Both these developments now enable the Township to by-pass both the Council and the federal government in approving leases for sites within Township boundaries.

. Resolutions of the Kayenta Chapter (KJ06-096-03); District 8 Council, Western Agency Council, Economic Development Committee, Government Services Committee, and Transportation and Community Development Corn-mittee of the Navajo Nation Council.

. The Dissent would have the Court rely solely on the passage oi EDCJN-28-09 (June *492 3, 2009), legislation passed twenty-three months after the filing of this case, which came to the Court’s attention on August 10, 2010 and October 20, 2010 with Appellant's filing of Supplemental Authorities. The majority refuses to establish precedent that permits the retroactive application of later enacted legislation to decide the outcome of an appeal. More importantly, as EDCJN-28-09 pertains to leasing authority and not the right of actual possession, it has no relevance in resolving issues arising from a forcible enlrv action. As we have previously stated supra at slip op. 4-8, the trial court erred in equaling the lease authority with the exclusive posses-sory right.